Spalding, J.
In the view wo take of this case, it only becomes necessary to notice the third ground of error, in the ^assignment of errors by counsel for complainants, to wit, that the agreement was nothing more than security for the payment of the $100.
It is true that it nowhere appears among the papers that the infant heirs were served with process in the suit which so vitally affected their interests; and, under other circumstances, this omission would have received our serious consideration. As it is, the whole case will be made to turn upon the character of the instrument executed by William Ootterell to Thomas Morris, on April 7, 1829.
The court of common pleas of Clermont county, in making their decree, treated it as a conditional sale. In this we think they erred. The deed is in equity a mortgage. Upon its face it is really no more than a security for the payment of $100 in two years, although it commences with an undertaking to convey land-. This undertaking to make conveyance of the land, however, it must be remarked, is exceedingly limited. It is only in default of payment of the $100 by the time stipulated (two years), that the obligation to convey becomes absolute. How does this differ in effect from the ordinary mortgage deed? In the case of this latter instrument, the lands are first actually transferred with covenants of seizin and warranty; but then a simple condition is inserted, that if a certain sum of money be paid by the grantor to the grantee in a given time, the whole conveyance shall be void.
In the agreement we are considering, there is only a promise for *401 a deed, and then a stipulation that, if the money be paid in two years, this promise for a deed is not to be considered an absolute promise. In the language of the instrument: “ On default of payment of the above sum, at the time stipulated, then this obligation for the conveyance of the land aforesaid shall be absolute.”
Who can fail to see that the object of Thomas Morris, in taking this obligation from William Cotterell, was to obtain security for his debt? And if so, the instrument is a mortgage, no matter what shape it may have assumed.
*Chief Justice Buchanan, in Dougherty v. McColgan, 6 Gill & Johns. 281, asserts this doctrine: “Whenever the intention is to take a security for a subsisting debt, or for money lent, and to avoid or restrict the equity of redemption, chancery, seeking to protect the debtor against the rapacity of the creditor, and to do full and equal justice between the parties, will defeat such intention, by treating the transaction as a mortgage, and extending to the debtor the benefit of the equity of redemption.”
See also Page v. Foster, 7 N. H. 394, wherein the judge remarks : “If it was intended as a security, it is a mortgage.”
And so in Flagg v. Mann, 2 Sumn. 533, where Judge Story lays down the rule: “ If a transaction resolve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage. If it be not a security, then it may be a conditional or an absolute sale.”
It is true that the agreement to convey the land is followed by a seeming alternative, to bo adopted by the obligor, at his option, within two years: “ Or I will pay to the said Thomas Morris $100 in two years,” etc. But the legal effect of this phraseology is to create a defeasance, as much as if the words were, “ on condition,” or “provided, however,” etc. Chief Justice Shaw, in Nugent v. Riley, 1 Met. 110.
Again, it is urged that this deed from William Cotterell to Thomas Morris was not a mortgage, inasmuch as there was no personal obligation given for any debt, from the former to the latter. This the law does not require. “A mortgage is the conveyance of an estate by way of pledge for security of a debt, and to become void on the payment of it.” 3 Kent’s Com. 129. “It is none the less a mortgage because there was no collateral personal security for the debt taken at the time.” Rice et al. v. Rice, 4 Pick. 349; Smith v. People’s Bank, 11 Shep. 195.
*402 If the claim of Morris to the $100 could have been enforced either in personam or in rem, it would have been *a subsisting debt between the parties, and the conveyance of land would be construed a mortgage. See Judge Story’s opinion in 2 Sumner, 534, already cited. But, as the same learned judge remarks elsewhere, “ it is well known that courts of equity lean against construing contracts of this sort to be conditional sales; and, therefore, unless the transaction be clearly made out to be of that nature, it is always construed to be a mortgage.” So Lord Hardwicke laid down the doctrine in Longuet v. Scawen, 1 Ves. 406, and it has never been departed from. The onus probandi, then, is on the defendants to establish it to be a conditional sale.
The assignees of Thomas Morris have given us no such proof. Nay, the very assignment of Morris to Moses Long contains no slight evidence that the assignor, himself an astute lawyer, was fully conscious that, although his contract for a conveyance had, by its terms, become absolute, an equity of redemption still subsisted in the heirs of William Cotterell. It makes a show of warranting a title to Long, his heirs and assigns, but winds up with this pregnant reservation: “ with the exception therei n mentioned.’
What need of alluding to the stipulation that the payment of a $100, if made within two years, would relieve the land, the time having elapsed, if the parties regarded the transaction as a conditional sale ?
On the whole, we are unanimously of the'opinion, without reference to the depositions, that the contract executed by William Cotterell to Thomas Morris, on April 7, 1829, was intended by the parties as security for the payment of a debt, and consequently, in equity, must be regarded as a mortgage. The decree of the court of common pleas of Clermont county is erroneous and will be reversed.
The cause will be remanded to that court, with directions to take an account of the money due, by reason of the original debt of $100, and interest, and to charge said land therewith as upon a mortgage.